The court will proceed to the fifth case of the day, Avina v. Bohlen. Ms. Swannigan Good morning, Your Honor. May it please the court. I'd like to address two significant issues in this matter that were both in our brief. The first one that I would like to address is the issue of the contradictions and Rule 56.1. Under Perez, the court concluded that if the moving parties undermine its own Rule 56.1 statement with contradictory evidence, the non-movement's failure to comply with Rule 56.1 is not decisive. To do otherwise, the court noted, would be to reward parties who successfully obfuscate the record and engage in gotcha litigation tactics. Looking specifically at the contradictions in the record, it was specifically disputed whether the party trespassed in this case and whether probable cause existed. Could you just help me out with this? In what sense did the third amended complaint change the nature or the details of the excessive force claim? I intend to get to that later, but I'll address it now. When it comes to the, I'm sorry, say which claim you specifically stated. I'm wondering what in the third amended complaint changed the nature or the details of the excessive force claim. Okay, gotcha. Okay, so when it comes specifically to the excessive force claim, what we did was we altered the theory in which the excessive force claim actually took place and what all constituted the excessive force. So when we first prepared the amended complaint, one of the things that we did not include was the totality of circumstances from where this incident first started to where the broken arm actually occurred. We now consider this entire situation to be excessive and to lead towards this concept of it being excessive force. In other words, Avina started off in front of the school. He was compliant in what they told him to do. They told him to leave the school premises, so he left the school premises. He went across the street. At that point, based on three different depositions, three different witnesses, the police drive up on the curb, which this was not included in the first amendment complaint. They drive up on the curb, almost running these three individuals over. They claim they're not compliant, but they're across the street. They're no longer on school property. That's compliant, in my opinion. The next thing that happened was then they then were told again, get out of here, go away. So they went down the street two more blocks. At that point, the police continued to harass them, went after them again, harassing them, calling them names, and bullying them. They then said, you know what? They were going to totally disperse. We're getting out of here. My client went to his cousin's house, was standing in front of his cousin's house on his cousin's property, was having a conversation with his cousin for at least 15 or 20 minutes, according to my client's deposition. The police then again ride up onto his cousin's property and say, hey, you guys have to go. You're trespassing. And he tries to explain that he's on his own cousin's property. They don't want to hear it. He decides at that point, I'm going to go home. At that point, he crosses back across the street, heading in the direction of his house, down Lapham. And at that point, the police then stop him. My client testifies at least six times in the deposition that he never entered school property again, that he stayed on the sidewalk, that he did not believe the sidewalk was school property, that he was heading home. The police then come after him again. He is now crossing the property, crossing the intersection, I'm trying to say, and he gets to a median. The police stop him at that median, and he immediately drops his bike, puts his arms behind his back. At that point, the officers, and I have three witnesses also testify to this, the officers grab his arm, push forward on his back, raise his arm, breaking his arm. I have a doctor's report that says for that type of a break, which was it was a spiral break that occurred, it required great force, and it also required a twisting of the arm for it to actually be broken. In Boland's testimony, the officer who actually broke his arm, he admitted that he twisted his arm. Then he tried to change it up in the middle of the sentence and say, no, I didn't mean to say twist. I meant to say I rose his arm. This becomes a question of credibility. It's not a question for the judge to make at the time of the motion of summary judgment became an issue of credibility at this point. Moving back to the actual contradictions within the record. There was a contradiction specifically as I just stated about probable cause. The appellee's brief at motion for summary judgment attempted to say in their proposed facts that my client admitted to trespassing back on the school property. The specific item that they use, we would have objected to at a trial. Would not have even come in as evidence because it's a computer generated photo. It is not the document that my client wrote on. It doesn't even coincide with the testimony. At the point where that actually is in the record, in the actual deposition, which the appellee attached to the brief, which is on document 99, page 10, line 60. It shows a computer generated marking. There should have been an X. According to Avina's excerpt, depo mark with an X. There's an actual computer generated mark. It's not the mark that my client made. This is not evidence, but this is what the lower court relied upon. The other thing, page 99, document 99, page 12, line 70. It says make a red line indicating the direction of travel by plaintiff. And the red circle indicates the area where plaintiff dropped the individual off. If you look at the actual depo, which was submitted by appellee, which is a contradiction. It says that he was instructed to make a number one or triangle indicating where this was. But if you look at the actual map that was submitted, there's a circle. This is clearly not the same document, nor is it the same place that my client marked. And the reason that is, because if you also go and look at the deposition that was submitted by appellee, that there's a statement where my client clearly says, and he's actually asked by appellee's counsel, did you drive down the sidewalk and drop off the client? My client says yes. That's included in the excerpt. But what's not included in the excerpt, if you go from page 24, which the excerpt intentionally takes out, page 24 to 27, if you go and look at the actual depo between 24 and 27, he repeatedly says I only drove down the sidewalk. It is hard pressed for you to say that this is our argument, that our client said that he did trespass, that there was probable cause. When he's repeatedly stated that he didn't, when the evidence itself that was presented doesn't even coincide with the deposition that was presented. It's wholeheartedly a misrepresentation of the facts. It's a misrepresentation of our client's presentation of the evidence. It's a misrepresentation of the graph. And it does not coincide even with the evidence that was put forth before the lower court. And on that, just even on the probable cause alone issue, we should have been presented before a jury. On the probable cause issue alone, according to Morfin and Pauley, the court should have said that this was an issue, a question for the jury, and that it should have moved on at that point. You're in the rebuttal, you know. Oh, I'm sorry. Well, you know, that camera covers up that. It does. But you may not be able to see that. That's why I'm telling her. Yeah, and I'm short, so I didn't see it. Thank you for pointing that out. One last thing, because I do have four minutes in my rebuttal, and then I'll move on. When it comes to the amended complaint issue, our counsel at the last minute sent a letter to the court. I have not had a chance to brief that letter. I would like to brief it if the court is so willing to allow me to. However, in response to that letter, I did take a couple of notes. One, according to the Pepper case, there is an issue of timing. If you read the actual decision in that case, the timing of that motion for summary judgment actually did address the amendments in the complaint itself. That is not our case. The other reason that they claimed that it was futile for him to actually answer was because the amended complaint did not present on its face an issue or controversy. However, that's not our case. We have an issue or controversy that is viable for a jury to determine. There's an issue of probable cause. There's issues of credibility that go back and forth in this case. So you would like a little time to respond to the 28-J letter? Yes, I would. You may have 10 days. Thank you. And if there's no further questions, I'll reserve the rest for the public. Mr. McClain. Thank you, Judge. May it please the Court, my name is Patrick McClain. I am an Assistant City Attorney for the City of Milwaukee, and today it is my privilege to represent Milwaukee Police Officers Todd Bolin and Mike Rohde, as well as the City of Milwaukee, before this Court. The Plaintiff's Counsel spent most of her time on a single argument, so I'm going to try and zero in on that, and then hopefully if I have time, I'll address some other issues. Actually, I would like you to address other issues.  Yeah. Could a jury find that it was unnecessary and unreasonable for Officer Bolin to raise Mr. Avena's right hand behind his back, given that Mr. Avena was cooperating, there was no urgent need to restrain him, and the offense was minor? The officers could have simply asked Mr. Avena to place his hands behind his back in preparation for handcuffing, couldn't they? They could have, but the law does not say that anything other than that would be unreasonable. And that's essentially the standard that the Plaintiff would have to prove, and I hope you can see me, that the Plaintiff would have to prove in order for this to constitute excessive force. The act of raising a suspect's hand behind their back for handcuffing is, as the District Court asserted, ordinary. I mean, I think the words they used was, it can be expected in just about any arrest. And I think it would be a dangerous precedent to say that in the course of an arrest, an officer has to be cognizant, you know, where do we draw the line? Where does it become unreasonable? Can they go 30 degrees? Can they go 38 degrees? I mean, the point of breaking the arm is one place you can do that. Yeah, how about that? Well, so I think now we're transitioning from that into the issue of the jurisprudence set forth in Stainbeck v. Dixon, which says you can't just point to the injury. You have to look at the conduct in question. And so here... This is almost a re-substitute case, it seems to me. Pardon me? How could you break somebody's arm, which requires a certain amount of effort, you'll have to admit, without using excessive force when you're in the process of handcuffing him? Well, first, I would submit that it is the defendant's position that the plaintiff's version of events is untruthful. And I think the great weight of the evidence that would have been presented would have shown that. Well, let's start with the basic evidence. They arrested him, they were handcuffing him, and they broke his arm in the process of handcuffing him. Right, so... Okay, now stop right there. Is there a reasonable explanation that they did not use excessive force in order to break his arm? Now we're getting into a tricky issue of... We are getting into a tricky issue. The whole thing is tricky. Now I want you to untrick it for me and tell me... Absolutely, Judge, I'm happy to. What brilliant idea do you have that you can take a guy's arm, put it around, break it, and you haven't used excessive force? The defendant's version of events, which was not before the court at summary judgment, because of course under Rule 56 you have to take the evidence in the light most favorable to the non-moving party, but what actually happened, and I'll go as far as to say that because this is what the evidence really shows, is that as the officers were escorting the plaintiff, Mr. Ravina, to their vehicle for handcuffing, he lunged away from them. Is that a disputed question of fact, or is that accepted? That's the defendant officer's testimony. Is that a disputed question of fact, I ask? For the purposes of summary judgment, we took the facts in the light most favorable to the plaintiff. They would certainly dispute it, but... All right, then it's a disputed question of fact. But what Celotex... It's a disputed question of fact, is it not? It's not for the purposes of summary judgment. Really? What Celotex says, what the Supreme Court says at summary judgment, is not just that any dispute of fact defeats summary judgment. A material. A material and genuine dispute of fact. How about the most material? How about the most material fact? Well, material... I mean... I'm sorry, Judge, go ahead. Yeah, I mean, shouldn't a jury have been able to see the evidence? Shouldn't this have been submitted to a physician at the very least? Well, I will just briefly correct something that the plaintiff said. Their plaintiff did not offer an opinion as to causation. They just said that the injury occurred. It was basically... Why would you have to? There's no dispute that they were in the process of handcuffing him when they broke his arm. Right, but what this Court's precedents say is you can't just look at the injury. You have to look at the action taken by the officers that is alleged. And here... Pause. Is there any dispute as to how people put on handcuffs? What kind of factual problem would be presented? I don't believe there is a dispute of fact on that in this case. You're quite right. But it does not lean in the direction of your client's position. If you're putting on handcuffs in a normal position, you don't break people's arms. They put them on all the time, and arms are not broken all the time. So these questions, if I can just briefly touch on Stainbeck and then the summary judgment standard, I think I can answer your question because I think it's an overlapping analysis. For the purposes of summary judgment, a dispute of fact must be genuine. In other words, there must be some fact in the record which would lead a reasonable jury to conclude in the plaintiff's favor. In other words, the plaintiff has to proffer enough evidence that it can satisfy the elements of his claims. In this case, neither the plaintiff's version nor the defendant's version are sufficient to satisfy the elements of excessive force or assault and battery. So while technically the stories are not the same between the defendants and the plaintiffs, the most important aspect of those differences is that neither version of events would have entitled them to satisfy the elements of their claims. And the reason that's the case is even under plaintiff scenario, and I want to be clear what we're talking about when we're talking about plaintiff scenario because plaintiff has, throughout the briefs and even today at oral argument, been attempting to inject facts that were properly rejected by the district court. What we're talking about is moving an arrestee's hand about halfway up his back for handcuffing. And what Stainbeck says is sometimes, as in Stainbeck, the exact example in Stainbeck, sometimes just taking an innocuous police action results in a significant but bizarre and unexpected injury. And that's precisely the scenario that we're presented with here. Now, I want to be clear. Wait a minute. How do we know this? This case needs a jury trial. According to this court's precedent, it would be inappropriate to give it a jury trial because the plaintiff has not been able to point to a set of facts that would have permitted it to succeed or permitted the plaintiff, excuse me, to succeed on his claims. Now, as a as a backdrop, I cannot even begin to imagine why you think a jury could not confer that officer Poland used an excessive for degree of force. You know, the facts, as Judge Stattmuller recounted them, do not actually speak to how much force officer Poland was using. There's plenty of room for an inference that the force was excessive. What what Stainbeck says is that there's not because you cannot use the injury itself as the basis to claim excessive force. And that's that's this court's decision has said you need to look at the actual actions. Oh, but that's what Judge Stattmuller did. He did. He according to the plaintiff's own testimony. And if you look at the decision of the district court, the district court actually took the version of events directly out of the plaintiff's sworn testimony. And all the plaintiffs said and again, I want to be clear. This is because it's our position that this is a fabrication of events. And what actually happened is what the officers are saying happened, which is why it actually doesn't make sense is all the officers did was raise his hand halfway up his back for handcuffing. And the fact that and this is and Stainbeck says this loud and clear. The fact that a bizarre injury occurred as the result of that cannot form the basis of an assertion of excessive force because the action of the officer itself was reasonable. And I think we're really wading into dangerous territory if we're going to tell officers that they need to be on caution by placing the suspect's hands behind their back. And so just as a backdrop to all of this, the Stainbeck case itself is very similar. And there's another district court case that's very similar to the circumstances here. Defendants also moved for summary judgment on the basis of qualified immunity. And certainly, even if this court is inclined to say that, well, perhaps as a matter of law, we can't say for certain that this was an excessive force. The facts of those cases clearly indicate that placing a suspect's hands behind his back for handcuffing is not an excessive use of force. They would certainly be entitled to qualified immunity. Excuse me, Judge. I'll agree with that. Places his hands behind his back is not excessive force. Breaking his arm is a positive problem. But that's exactly what we get to in Stainbeck is that you cannot point to the injury as justification for, oh, I'm sorry, Judge. And I would ask this court to affirm the decision of the district court. Thank you. All right. Thank you, Mr. O'Farrell. How much? How much time has she got? How much time? One minute. One minute? I will be exactly brief. Thank you, Your Honor. At this point, Your Honor, we would ask for you to reverse the lower court's decision and remand this case back to the lower court. The statements from Apelli's counsel in regards to the breaking of the arm and their version of the story being that he stepped off a six-inch curb and that somehow resulted in his arm breaking is ludicrous, and it is a question for the jury. One of the other factors that we have not brought up, and I'm not sure if it's in the brief, but it was definitely in the motion for summary judgment briefing, is that the policy of the Milwaukee Police Department for a trespassing ticket is that you do not have to handcuff the person. You do not have to arrest them. All you have to do is write them a ticket and let them go. So it is my position that based on the totality of the circumstances, including the fact that he was handcuffed after his arm was broken and taken to the hospital in handcuffs, which we have another nurse that could testify to him being in handcuffs at that point. At that, I'd let it rest in the briefing. Thank you, Your Honor. All right. Thank you. Thank you to all counsel. The case is taken under advisement.